**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
MARÍA ELENA SWETT URQUIETA, :
:
                            Petitioner, :    Case No. _____
:
   - against - :
:
JOHN FRANCIS BOWE, :
:
                          Respondent. :
:
------------------------------------------------------------------ x

## VERIFIED PETITION FOR RETURN OF CHILD

Pursuant to the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Hague Convention" or "Convention"), and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* (the "ICARA"),[1] Petitioner María Elena Swett Urquieta ("Ms. Swett" or "Petitioner"), by her undersigned attorneys, for her Petition against Respondent John Francis Bowe ("Respondent"), hereby alleges as follows:

### I.    NATURE OF THE ACTION

1. Petitioner brings this action under the Hague Convention and the ICARA (which Congress enacted to enforce the provisions of the Hague Convention)[2] seeking the

---

[1] For the convenience of the Court, copies of the Hague Convention and the ICARA are attached to the accompanying Declaration of Jacob Lewis ("Lewis Decl.") as Exhibits 1 and 2, respectively. All cites to "Ex." hereafter refer to exhibits to the Lewis Decl.
[2] *See* 22 U.S.C. 9001 *et seq.* (formerly 42 U.S.C. § 11601 *et seq.*).

immediate return of her wrongfully-abducted eleven-year-old son, S.B.S.,[3] back to his home with her in Chile.

2. Since February 26, 2023, S.B.S. has been wrongfully retained in New York by Respondent, S.B.S.'s father John Bowe, against Petitioner's wishes and despite that Petitioner has not consented or acquiesced to S.B.S. being held in New York.

3. At the time Respondent began wrongfully retaining S.B.S. in New York, Petitioner had full custody of S.B.S. under both Chilean and United States law, pursuant to a Custody Order dated March 8, 2013, entered by the District Court, Family Court Division of Hennepin County, Minnesota, awarding Ms. Swett "sole physical custody of the parties' son, S.B.S.," "in Chile," and a corresponding August 29, 2014 Custody Order entered in Chile.[4]

4. The Hague Convention applies to cases where one parent (here, Respondent) wrongfully removes and/or retains a child, under the age of sixteen years, from the child's "habitual residence" in breach of the other parent's (here, Ms. Swett's) custody rights, while such custodial rights were being exercised at the time of the child's wrongful retention. *See* Hague Convention, Art. III.

5. Ms. Swett had full legal custody of S.B.S. at the time Mr. Bowe began wrongfully retaining S.B.S. in the United States on February 26, 2023.

6. S.B.S.'s habitual residence was Chile at the time Mr. Bowe began wrongfully retaining S.B.S. in the United States on February 26, 2023.

---

[3] S.B.S. is a pseudonym used to protect the privacy of the wrongfully-abducted minor in this case.
[4] *See* Ex. 3 (2013 MN Custody Order) at 4 ¶ 7, 6 ¶ 1; *see also* Ex. 4 (2014 Chilean Custody Order) at 2 (awarding full custody of S.B.S. to Ms. Swett).

7. Ms. Swett had actual custody of S.B.S.—*i.e.*, her custodial rights were being exercised—at the time Mr. Bowe began wrongfully retaining S.B.S. in the United States on February 26, 2023.

8. Under the Convention, the Court should not delay in granting Ms. Swett the relief she seeks. The purpose of a Hague Convention petition is **not** to determine custody, but "(1) to secure the prompt return of children wrongfully removed to or retained in any Contracting State [here, the United States]; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. I.

9. Numerous federal courts interpreting the Hague Convention and the ICARA have confirmed that it authorizes a federal district court to determine the merits of the abduction claim and order return of the child to his or her home country, but **does not** allow it to consider the merits of any underlying custody dispute.[5] Indeed, because of the inherent urgency of Hague Convention petitions, no authentication of any documents or information included with this Petition is required.[6]

---

[5] *See, e.g.*, *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999); *Friedrich v. Friedrich*, 983 F.2d 1396, 1399 (6th Cir. 1993); *Feder v. Evand-Feder*, 63 F.3d 217, 221 (3d Cir. 1995) ("the cornerstone of the Convention is the mandated return of the child to his or her circumstances prior to the abduction if one parent's removal of the child from or retention in a Contracting State has violated the custody rights of the other, and is, therefore, 'wrongful.'").
[6] *See* 22 U.S.C. § 9005 ("With respect to any application to the United States Central Authority, or any petition to a court under section 9003 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.").

10. Petitioner Ms. Swett respectfully requests that, under the Hague Convention and the ICARA, this Court order, as soon as reasonably practicable, the return of her son S.B.S. to his home with her in Chile.

## II.     PARTIES, JURISDICTION, AND VENUE

11. Petitioner María Elena Swett Urquieta is a resident of Chile, a Chilean citizen, and the mother of S.B.S.  At the time of Respondent's wrongful removal and retention of S.B.S., Ms. Swett had sole legal custody of S.B.S. in Chile.

12. Respondent John Francis Bowe is the father of S.B.S. and, upon information and belief, a resident of New York and an American citizen.

13. This Court has jurisdiction over this case under 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

14. Venue is proper under 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, Respondent currently resides at ▮▮▮▮▮▮▮▮▮▮▮▮▮, New York, New York 10014, in the Southern District of New York and has removed and retained S.B.S., a child under the age of sixteen (16) years, from his habitual residence of Chile to the United States of America at that address.

## III.     FACTS

**A.     Background and Current Status of Petitioner and Her Child S.B.S.**

15. Petitioner and Respondent are both parents of S.B.S.  Petitioner is an actor and television personality in Chile, and Respondent is a freelance writer based, upon information and belief, in New York.  The two met in Brazil in September 2010 and maintained a relationship, but never married.

16. In September 2011, Ms. Swett and Respondent decided to have a child. While her full-time residence was in Chile at the time, Ms. Swett visited Respondent in New

4

York City. Originally, Ms. Swett and Respondent planned that S.B.S. would be born in Chile and made appropriate arrangements for the delivery at a clinic in Chile. However, they eventually decided together that Ms. Swett would give birth to S.B.S. in Minnesota, where Respondent's family was located.

17. Ms. Swett, an actress, had signed onto a television series to begin on January 3, 2013. These productions were shot in Chile and required her to be in Chile. Ms. Swett and Respondent's mutual intent at that time was that they would return to Chile by December 2022 and live there together.

18. On ▇▇▇▇, 2012, S.B.S. was born in Minnesota, where Respondent's family lived.[7]

19. S.B.S. and his mother Ms. Swett only lived in Minnesota for approximately six months before Respondent commenced a family court action in Hennepin County, Minnesota, served on Ms. Swett on or about December 22, 2012, seeking temporary custody and seeking to keep S.B.S. in the United States.

20. This had been a well-orchestrated trap by Respondent, who was living with Ms. Swett at the time and even had to let a process server into their shared home to serve Ms. Swett with the initiation papers. Respondent's duplicitous conduct in 2012 mirrors his illegal and wrongful retaining of S.B.S. today. About three months thereafter—in March 2013—Respondent and Ms. Swett agreed, and the Minnesota court entered a Stipulation and Custody Order ordering, that Ms. Swett would have sole physical custody over S.B.S. and that S.B.S. was to live in Chile with his mother.[8] The same Order stated that Respondent would have no less

---

[7] *See* Ex. 5 (S.B.S. Birth Certificate).
[8] *See* Ex. 4 (2013 MN Custody Order).

than ninety days/nights of unrestricted contact with S.B.S. per year, in accordance with the applicable Minnesota statute.[9]

21. S.B.S. then grew up in Chile for the rest of his life. Once S.B.S. was older, he would occasionally visit his father, Respondent, in the United States. Typically, this would be during the Chilean winter holidays (June/July) for a week or two, and during the Chilean summer holidays (December/January) for approximately a month. At no point did the parties share an intention for S.B.S. to permanently reside anywhere but Chile.

22. After these vacations, S.B.S. would always return to Chile, where he attended school and had medical check-ups—until February 26, 2023 when Respondent began wrongfully retaining S.B.S.

**B. Ms. Swett Grants Respondent Written Authorization to Oversee S.B.S. in New York from December 23, 2022, until January 8, 2023, And Subsequently Stipulates to Extend that Period Until February 26, 2023**

23. S.B.S. is now eleven (11) years old. The Hague Convention applies to cases where a child under the age of sixteen (16) years has been removed from their habitual residence in breach of the custody rights of the left-behind parent, which the left-behind parent (here, Petitioner Ms. Swett) had been exercising at the time of the wrongful removal or retention of the child.

24. On December 23, 2022, Ms. Swett signed a written travel authorization[10] permitting S.B.S. to travel to the United States until January 8, 2023, to stay with Respondent, his father. He was required during that time to have "daily contact" with Ms. Swett, his mother.

---

[9] *See id.* ¶ 9.
[10] *See* Ex. 6 (Written Travel Authorization).

25. On January 8, 2023, Respondent contacted Ms. Swett and demanded that she permit S.B.S. to stay with Respondent until the end of February 2023. While Ms. Swett initially refused, she eventually reluctantly set a deadline that S.B.S. could return home on February 26, 2023, because the Chilean school year did not begin until March, so this temporary extension would not interrupt S.B.S.'s studies.

26. However, at the end of February 2023, Respondent and an American mediator reached out to Ms. Swett to make clear that Respondent would not be returning S.B.S. to Chile.

27. Since that time, Ms. Swett has been separated from her son.

28. S.B.S.'s wrongful retention in the United States began on February 26, 2023 and continues to the date of this filing.

29. At the time of S.B.S.'s abduction from Chile to the United States, Ms. Swett had (and continues to have) custody rights under Chilean law such that Respondent's retention of S.B.S. in the United States is in violation of Chilean law. Respondent's conduct also constitutes a wrongful retention under Articles 3 and 5 of the Hague Convention.

30. When Respondent removed and wrongfully retained S.B.S., Ms. Swett was actually exercising custody rights within the meaning of Articles 3 and 5 of the Hague Convention (*i.e.*, she is S.B.S.'s mother; was residing with S.B.S.; and has exercised custody rights over S.B.S. since he was born).

31. S.B.S. was habitually resident in Chile within the meaning of Article 3 of the Hague Convention from March 2013 until his wrongful retention began on February 26, 2023.

32. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the child, or who claims to have rights of parental responsibilities, or legal or physical custody of, or visitation or parenting time with, S.B.S.

IV. **WRONGFUL REMOVAL AND RETENTION OF S.B.S. BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION**

33. A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal or retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. *See* Hague Convention, Arts. 3 and *5*.

34. "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." *See* Hague Convention, Art. 5(a).

35. S.B.S.'s country of "habitual residence," as defined in Article 3 of the Hague Convention, is Chile, which is where he habitually resided prior to his wrongful removal to the United States.

36. Ms. Swett has the right of custody of S.B.S. within the meaning of Articles 3 and 5 of the Hague Convention, because she was awarded full custody of S.B.S. by a Chilean court (*see* Ex. 4 (2014 Chilean Custody Order) at 2 (awarding full custody of S.B.S. to Ms. Swett)) and a Minnesota court (*see* Ex. 3 (2013 MN Custody Order) at 4 ¶ 7, 6 ¶ 1), and also pursuant to Art. 225 of the Chilean Civil Code which states as follows (translated to English):

> If the parents live separately, they may determine by agreement that the personal care of the children falls upon the father, mother or both on a shared basis. The agreement will be granted by public deed or document issued before any Civil Registry official, and

8

must be annotated in the margin of the child's birth registration within thirty days following its granting. … In the absence of the agreement described in the first paragraph, the children will continue under the personal care of the father or mother with whom they are living.

37. On or about December 23, 2022, S.B.S. left Chile for the United States to visit Respondent, who lives in New York, as he had done nearly every year in the past, with Ms. Swett's express written authorization. That travel authorization required S.B.S. to return to Chile January 8, 2023. On January 8, 2023, Respondent demanded that S.B.S.'s stay be extended until the end of February 2023 because S.B.S.'s school year in Chile did not begin until March. Ms. Swett initially refused, but eventually reluctantly set a deadline that S.B.S. could return to Chile on February 26, 2023. However, at the end of February 2023, Respondent made clear that he would not be returning S.B.S. to Chile.

38. Following abduction by the Respondent from Chile to the United States, S.B.S. is currently being illegally held in custody, confinement and/or restraint by the Respondent in the State of New York, New York County.

39. Upon information and belief, Respondent is keeping the Child at ▌ ▌, New York, New York 10014.

40. The Child is now eleven (11) years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to S.B.S. Petitioner has never consented or acquiesced to Respondent's wrongful removal and/or retention of S.B.S.

## V.   PROVISIONAL REMEDIES

41. Pursuant to Fed. R. Civ. P. 65, Petitioner María Elena Swett Urquieta hereby moves the Court for an *ex parte* order temporarily restraining and prohibiting Respondent John Francis Bowe from removing S.B.S. from this Court's jurisdiction, taking into safe-keeping

all of S.B.S.'s travel documents, and setting an expedited hearing on this Petition for Return of Child.

42. This injunctive relief is vitally necessary on an *ex parte* basis to prevent irreparable harm to Petitioner. Specifically, under 22 U.S.C. § 9001(a), a district court is empowered to take appropriate measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." This is such a case.

43. Given Respondent's recent history of abduction and substantial risk of flight, Respondent's conduct is a risk to further abduct the child or remove the child from this jurisdiction.

44. Respondent poses a substantial risk of flight because Respondent is a freelance writer and public speaker who has a documented history of international travel and connections abroad.[11]

45. Petitioner therefore believes that the child, S.B.S., could be carried out of the jurisdiction of this Court or could suffer some irreparable injury unless a temporary restraining order is issued.

## VI. ATTORNEYS' FEES AND COSTS

46. To date, Petitioner has incurred attorneys' fees and costs as a result of the wrongful removal of S.B.S. by Respondent.

---

[11] *See* Ex. 7 (New York Times interview with John Francis Bowe, "A Bachelor's Effort to Understand Love") (chronicling Respondent's history of "travel[ing] the world for a decade").

47. Petitioner respectfully requests that this Court award her all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.[12]

48. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

## VII. NOTICE OF HEARING

49. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to the New York Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully prays that the following relief be granted:

a. Set an expedited hearing on the petition and communicate that hearing date and time to Petitioner so that Petitioner may provide notice of these proceedings and the hearing pursuant to 22 U.S.C. § 9003(c);

b. Issue an immediate order requiring that Respondent immediately surrender any and all of his passports and all of the passports of S.B.S.;

c. Issue an order following the hearing directing that S.B.S. shall be returned to his Habitual Residence of Chile, pursuant to Article 12 of the Hague Convention;

d. Enter an immediate *ex parte* temporary restraining order prohibiting the removal of S.B.S. from the jurisdiction of this Court pending a hearing on the merits of the Verified Complaint, and further providing that no person

---

[12] This section has been repeatedly interpreted by federal courts to apply with equal force to petitioners represented by *pro bono* counsel.

    acting in concert or participating with Respondent shall take any action to remove S.B.S. from the jurisdiction of this Court pending a determination on the merits of this Action;

e. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the child's wrongful removal and retention pursuant to 22 U.S.C. § 9007, including all attorneys' fees incurred; and

f. Such other and further relief in Petitioner's favor as this Court deems just and proper.

Dated: New York, New York
    February 23, 2024

          FRIEDMAN KAPLAN SEILER
           ADELMAN & ROBBINS LLP


            */s/ Jacob Lewis*
         Jacob Lewis (jlewis@fklaw.com)
         7 Times Square
         New York, NY 10036-6516
         (212) 833-1100

         *Attorneys for Petitioner*
         *María Elena Swett Urquieta*

## **VERIFICATION**

    I, María Elena Swett Urquieta, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America that I am the petitioner in the within action and have read the foregoing Petition, translated into my native language of Spanish, and know the contents thereof to be true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated: February 23, 2024

                                                    María Elena Swett Urquieta